CHARLES L. DAVIS ET AL. *v.* THEODORE SCHMIDT.

LEVEE TAX-TITLE. *Act of* 1867. *Sale before default.*

    Under the act to provide for the payment of the outstanding debts, etc., of the general board of levee commissioners, approved February 13, 1867 (Laws, p. 237), which provided that the taxes levied by it were to be paid on or before May 1st each year, and lands delinquent were to be sold on the second Monday of the same month, a sale after the first day, but before the second Monday, of May, was void. The days intervening between said dates were intended to be days of grace to the tax-payer, and no final default could occur until the later date.

FROM the chancery court of Washington county.

HON. W. R. TRIGG, Chancellor.

The appellee, Schmidt, filed this bill to confirm a tax-title to the lands in controversy. The case was heard upon an agreed statement of facts, which is as follows:—

"The land in controversy was sold on the 4th of May, 1868, to board of liquidating levee commissioners for the liquidating levee taxes of 1867, and came through this sale by successive conveyances to the complainant in this cause; that there was no other tax sale than that above mentioned and complainant claims through no other source than that above mentioned. It is further agreed that A. W. G. Davis died in 1885 intestate, and that respondents are his only heirs-at-law."

The decree was in favor of complainant, and defendants appeal.

*Wynn, Thomas & Griffin,* for appellants.

1. The sale for taxes on May 4, 1868, was void for two reasons : (1) No levee tax was due for which a sale could be made before May, 1869. (2) No sale under the act could be made until the second Monday of May, whereas this sale was made on May 4th, seven days before the second Monday. The language of the act is that the tax shall be payable annually "on or before the first day of May of each and every year *from* the first day of May, 1868." It fixed the first day of May, 1868, as the date from which the tax should begin to accrue, but does not include that day. It excludes the first of May, 1868, and measures forward,

making the first day of May, 1869, the first day of the maturity of the tax. The use of the word *from* excludes the first day. 18 Wall. 119.

2. The sale, being made on the wrong day, is void. No facts are shown which could exclude appellants from assailing the sale on that account. No curative statute applies. We admit that if there is default, notice to the owner is not necessary to the validity of a tax sale, but he has an absolute right to rely on the sale not being made before the day fixed by law. A sale before the day fixed by the statute would be taking property without due process of law. The construction of the statute being doubtful, it should be construed against authorizing the sale, in furtherance of justice. Cooley on Tax. 265.

*Jayne & Watson,* for appellee.

For the proper construction of the statute as to the right to sell the land for the taxes of 1867, see the general doctrine stated in Suth. Construction of Stat. §§ 260, 262.

The act itself made the levy. The purpose was to collect money to meet certain obligations of the levee board. The act shows that some of these obligations matured in June, 1867. We submit that the scheme contemplated the collection of taxes for 1867. The word "from" in the statute is the equivalent of "beginning with;" hence, the tax was payable annually, beginning May 1, 1868, and when the sale occurred, May 4th, there had been default.

WOODS, C. J., delivered the opinion of the court.

The appellee claims to derive title to the lands in controversy through a sale made on the 4th day of May, 1868, to the board of liquidating levee commissioners, for non-payment of liquidating levee taxes, alleged to have been due thereon for the year 1867.

The 2d section of the act of February 13, 1867, to provide for the payment of all debts and liabilities contracted or assumed, and all scrip or evidence of debt issued by the general board of levee commissioners, etc., makes the taxes levied by the act payable on the 1st day of May in each year, and the 3d section of the act directs the lands so in default to be sold on the 2d Monday in May

of each year. The taxes were not paid on these lands on the 1st day of May, 1868, and the same were sold, not on the 2d Monday in May, but on the 1st Monday in that month. Thus the question is presented, did this sale, made confessedly one week in advance of the day fixed by law for the sale of lands delinquent for taxes, convey any valid title? The question involves the construction of the statute, and is one of legislative intention purely, and not one of legislative power.

By the 2d section of the act, payment of taxes is contemplated to be made on or before the 1st day of May, and by the 3d section a sale of the lands is directed, if there be default made in payment, on the 2d Monday in May. A literal adherence to the words of the 2d section will deprive the tax-payer of the privilege and power of paying after the 1st day of May. It is true the taxes were due on May 1st, but it is not true in that sense which made them subject to sale for default in payment of taxes due thereon. Until the lands are directed to be sold, it cannot be reasonably affirmed that there has been that delinquency which authorizes and requires a sale. The general scheme of our tax laws does not contemplate any imposition of burdens upon others than delinquent taxes. If the tax-payer had paid, in accordance with law, or if his lands were sold while he yet had the right to pay, in accordance with law, he could not be said to be delinquent and should not be subjected to the penalty visited upon delinquents.

In the case at bar, the tax-payer should have paid on or before the 1st day of May, but if he did not he might pay at any subsequent time prior to the day when his taxes were due in such sense as made his lands liable to sale for final default in payment. The intervening period between the first day and the second Monday in the month were days of grace in which the tax-payer might still pay.

This view meets the spirit of our scheme of taxation, and does no violence to its letter, taken as one harmonious whole. Nor is this view at all at variance with the utterances of this court in *Nevin* v. *Bailey*, 62 Miss. 433, and other later opinions on this general subject. In the first named case, the remarks of the court had reference to a sale made on final default in payment of taxes, and

a sale after the days of grace had expired, on the day fixed by law when the lands were liable to sale for such final default.

We find it unnecessary to consider the other question presented, as this opinion disposes of the case as it now stands.

*Reversed and remanded.*